MilligaN, J.,
delivered the opinion of the Court.
The prisoner was charged, by indictment, in the Circuit Court of Overton, with the murder of G-eorge W. Dennis. He was tried by a jury of the county, and convicted of murder in the first degree, and sentenced to be executed. From this judgment and sentence of the Court, he has appealed in error to this Court.
The facts of this case present a melancholy picture of the depravity of human nature, and the depths of infamy to which it may be sunk. Crime, at first, is always timid, but by degrees and indulgence, it becomes more bold and defiant. One vice becomes the parent of another, and the offender, step by step, is imperceptibly advanced in the path of wickedness, until his career is often cut short by the penalty of the law.
In this case, the prisoner and the deceased were near neighbors and confidential friends. The war came on, and the deceased was arrested, and, for some time, confined in one of the military prisons of the United States. He left his wife and children behind him, and, in his absence, an illicit intercourse grew up between the prisoner and his wife. It was open, gross, *346 and demoralizing to the community in which they lived. The prisoner not only violated his own marriage vow, and brought shame and confusion on his. wife and children, but he betrayed the confidence of his absent friend, and polluted his marriage bed. His friends, for the sake of his wife, remonstrated, but he disregarded their admonitions, and persisted in the crime. The deceased was discharged from prison and returned home. The country, at that time, was infested with guerillas, and the deceased expressed himself afraid of one Dixon, who, it seems, was a desperado and brigand. He determined to remove with his family from the State, and, soon after, the prisoner began to predict that he would not get away alive, and said his wife loved him better than her husband, and would not go with him.
The day of the deceased’s departure from the country was fixed on Sunday, and the prisoner again predicted that he would be a dead man before Saturday night, or that he would not be surprised if he were killed. On the day before the murder the prisoner said: “The guerillas were thick in different neighborhoods, and he thought they would kill Dennis — he spoke as a friend, and said he thought Dennis had better leave, and not wait for his family.” The deceased did not leave, but on the Friday night before the Sabbath day on which’ he had appointed to remove from the State with his family, between ten and eleven o’clock, while sitting with some of his friends around his own fireside, he was shot from an aperture in the house, and almost instantly died. Ho approach was heard *347 to the house, or noise of departure from it. The proof further shows, that, about a week prior to the murder, the prisoner had obtained' the deceased’s gun; and that he had, on several occasions, misrepresented the statements of witnesses as to the presence of guerillas in the neighborhood.
It also appears, that predatory hands were frequently in the vicinity of the deceased’s house;’ hut none were proven to be present at the time of the fatal tragedy.
The mother of the prisoner, and his little daughter, only about thirteen years of age, were called as witnesses, and they proved, that, on the night of the killing, the prisoner was at his own house during the night. Under this statement of the proof, which embodies the controlling facts of this case, the Court substantially instructed the jury as follows:
After first defining murder in the first degree, as declared by the Statute, he said to the jury: “ You have seen that any killing, perpetrated by laying in wait, or administering poison, is murder in the first degree. You have the right, and it is your exclusive province, to look to the fact that the defendant was familiar with the wife of the deceased, and any other circumstance that has been developed by the proof, that may have given you ground to believe that it was his desire to take the life of Dennis. You will take all these facts, that have been devel-toped by the proof, and connect them together, and see, as your first duty, whether the defendant’s guilt *348 is consistent with the proof, beyond a reasonable doubt.”
This is the substance of the whole charge; and it is insisted, in argument, that it is not only erroneous, and inapplicable to the facts, but that it is not the entire law of the case. The Constitution of the State, art. 6, sec. 9, declares, that “ Judges are prohibited from charging juries with respect to matters of fact; but they may state the testimony, and declare the law.” Under this clause of the Constitution, it is the duty of the Judge trying the cause, to declare the whole law applicable to the case then on trial. It is true that the Court has held, on more .than one occasion, that upon the Circuit Judge’s failure to charge fully, and where there is no essential point omitted or wrongfully stated, it is necessary, in order to put the Court in error, that it should ' appear that further instructions were asked for by the party, and the Court refused to give them. But this doctrine has not been strictly applied in cases involving human life: Nelson vs. State, 2 Swan, 237-262.
The charge, in this case, not only falls short of the law of the case, but it is well calculated to mislead the jury. It is not enough that the facts and circumstances developed by the proof were sufficient to have furnished ground of belief in the minds of the jurors, that it was the desire of the prisoner to take the life of the deceased; nor is it sufficient that these facts and circumstances, when connected together, were consistent with the prisoner’s guilt. The *349 case is eminently a case of circumstantial evidence; and, while it was proper 'to direct the jury to look to the motive of the prisoner to perpetrate the act, it certainly does not follow that the establishment of a motive to commit crime necessarily insures its commission; nor does it always follow that the accused is guilty, when the facts and circumstances are merely consistent with his guilt. The law, out of tenderness to human life in criminal cases, has erected a much higher standard of truth, and far less liable to error than the one laid down by the Circuit Judge.
The circumstances must not only be consistent with the guilt of the accused, but they must exclude every reasonable hypothesis but that of his guilt—(1 Greenleaf’s Evidence, sec. 132)—or at least be sufficient to satisfy the mind and conscience of a common man beyond a reasonable doubt: Ib., sec. 2; Jim vs. The State, 5 Hump., 145; Bill vs. the State, 5 Hump., 155.
The testimony introduced by the prisoner, although unimpeached by the law, was, nevertheless, competent, and raised the question of an alibi. The charge does not embrace this defense,' nor does it comprehend any of the lower degrees of homicide. Had it done so, we do not say the result would have been different. It is enough to say, as this Court said in the case of Nelson vs. The State, “it might have resulted otherwise.”
Upon the facts as presented in this record, when taken in connection with the defects in the charge of the Court, we do not feel satisfied to consign the *350 prisoner to the gallows without another investigation before a jury.
The bill of exceptions, doubtless, does not present all the facts, as proven by the witnesses, to the jury; and, as the case must be re-heard, we forbear all comment on the facts.
The judgment of the Circuit Court, refusing a new trial, must be reversed; and the prisoner remanded for a new trial.